**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| JOSEPH L. MIZZONI, | 3:11-cv-00632-LRH (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| DEBRA BROOKS, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment (Doc. # 16.)[1] Plaintiff opposed (Doc. #21)[2] and Defendants have replied (Doc. # 22). After a thorough review, the court recommends that Defendants' motion be granted.

## I. BACKGROUND

At all relevant times, Plaintiff Joseph Mizzoni was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 5) at 1.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id*.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) Defendants are Debra Brooks, Judith He'bert, Charles Mahakian, E.K. McDaniel, and Rene Baker. (*Id*.; Screening Order (Doc. # 4).)

---

[1] Refers to court's docket number.

[2] Plaintiff titled this document a "Motion to Respond to Defendant's Motion for Summary Judgment"; however, after reviewing the document, the court will construe it as an opposing brief.

On screening, the court determined that Plaintiff states a colorable claim for retaliation under the First Amendment. (Doc. # 3 at 3-4.) Plaintiff alleges that Defendants retaliated against him for filing inmate grievances and lawsuits. (Doc. # 5.) Plaintiff asserts that he was moved to the prison's mental health infirmary from August 21, 2009 through September 16, 2009, based on retaliatory motive of prison staff. (*Id.*) Plaintiff further alleges a second incident of retaliation when he was again placed in the prison's mental health infirmary from September 8, 2010 through September 30, 2010. (*Id.*)

With respect to the first incident, Plaintiff claims that defendant Brooks ordered him placed in the infirmary in retaliation for filing an earlier emergency grievance related to a correctional officer spraying pepper gas through a vent into his cell. (Doc. # 5 at 14-15.) He asserts that defendant McDaniel "allowed, participated, or ordered" the retaliatory move into the infirmary. (*Id.* at 17-19.) He further alleges that defendant Mahakian was involved in the retaliatory decision to place him in the infirmary. (*Id.* at 19-21.)

As to the second incident, Plaintiff alleges that he was placed in the infirmary because he refused to talk to defendant He'bert about grievances or lawsuits he had filed against prison staff. (Doc. # 5 at 16-1.) Plaintiff claims that defendant McDaniel allowed medical staff to violate his rights. (*Id.* at 17-19.) Finally, he contends that defendants Brooks, Mahakian and Baker were involved in the retaliatory decision to place him in the infirmary. (*Id.* at 14-15, 19-21, 22-24.)

Defendants move for summary judgment, arguing: (1) Plaintiff cannot demonstrate that his placement in the mental health infirmary was retaliatory; (2) Plaintiff cannot demonstrate that defendants Brooks, Baker or McDaniel had any personal involvement with the decision to transfer Plaintiff to the infirmary, nor that they implemented specific policies that led to the alleged constitutional violations; and (3) Defendants are entitled to qualified immunity. (Doc. # 16.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no

dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal

citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

///
///
///

4

### III. DISCUSSION

**A. RETALIATION STANDARD**

A plaintiff may state a claim for violation of his or her First Amendment rights due to retaliation under 42 U.S.C. § 1983. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citation omitted); *see also Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 567-68). Retaliation claims must be evaluated in light of the deference that must be accorded to prison officials. *See Pratt*, 65 F.3d at 807.

The inmate must (1) submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action, and (2) demonstrate that his or her First Amendment rights were actually chilled by the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). The Ninth Circuit has recognized that prisoners have a fundamental First Amendment right to file prison grievances and pursue civil rights litigation, and "because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citation omitted).

A plaintiff's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment") (citation omitted).

"[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show

1 that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue
2 'would chill or silence a person of ordinary firmness from future First Amendment activities.'"
3 *Brodheim*, 584 F.3d at 1271.
4 **B. ANALYSIS**
5     **1. Summary of argument**
6     Defendants argue Plaintiff cannot demonstrate: (1) the transfer to the infirmary for
7 mental health monitoring amounts to an adverse action because it was undertaken to benefit
8 his health; (2) the transfers to the mental health unit were because of protected conduct;
9 (3) that the exercise of his First Amendment rights was chilled; and (4) that the transfer was
10 not for legitimate penological purposes. (Doc. # 16 at 5-6.)
11     In his opposition, Plaintiff argues that he was placed in the mental health infirmary as
12 a result of his filing grievances, and this is evidenced by the fact that he did not need to be
13 evaluated by mental health. (Doc. # 21 at 5-9.)
14     **2. Summary of evidence**
15     Prior to Plaintiff's placement in the infirmary on August 21, 2009, Plaintiff was seen by
16 defendant He'bert on two occasions in July of 2009. (Doc. # 16-1 at 6, entries dated July 2,
17 2009 and July 22, 2009.) The progress notes indicate that Plaintiff refused his medication.
18 (*Id*.) It was noted that Plaintiff was to continue to be monitored monthly. (*Id*., July 22, 2009
19 entry.)
20     On August 21, 2009, Plaintiff filed an emergency grievance form stating that he had been
21 harassed and pepper gassed through the vent in his cell by officers on the roof of his tier. (Doc.
22 # 16-4 at 16.)
23     The progress note entry for August 24, 2009, indicates that Plaintiff was brought to the
24 infirmary under an order dated August 21, 2009, for mental health observation secondary to
25 staff reports of the "unmanageability" of Plaintiff. (Doc. # 16-1 at 6, Aug. 24, 2009 entry.)
26 Plaintiff was reported as allegedly hearing voices and claimed that custody staff was talking
27 about him above his cell block. (*Id*.) Plaintiff was evaluated and his monitoring was ordered
28

6

to continue because "this inmate is no longer on meds and has been severely delusional in the past." (*Id.*)

On August 22, 2009, Plaintiff submitted a medical kite stating that he was put in the infirmary in retaliation for filing a grievance. (Doc. # 16-2 at 6.) In response, Plaintiff was told that he was admitted to the infirmary for mental health observation. (*Id.*)

On August 26, 2009, Plaintiff was seen by defendant Mahakian, and denied hallucinations and delusions since he was taken off his medication in July. (Doc. # 16-1 at 6-7, Aug. 26, 2009 entry; Doc. # 15-11 at 6 ¶ 4 (Mahakian Decl.).) It was ordered that observation of Plaintiff continue for up to two weeks. (*Id.*)

The September 2, 2009 progress note entry indicates that Nurse Murphy responded to Plaintiff's grievance about inappropriate admission to the infirmary by advising Plaintiff that health care provider orders had been issued for his admission and observation. (Doc. # 16-1 at 7, Sept. 2, 2009 entry.) In addition, Plaintiff was seen by defendant He'bert on the same date. (*Id.*; Doc. # 16-1 at 10 ¶ 4 (He'bert Decl.).) Plaintiff was advised that his mood was being monitored, to which Plaintiff responded that he was "fine." (*Id.*) The nurse indicated that she would seek to obtain a physician's order that Plaintiff receive his property and yard privileges when his period of monitoring was complete. (*Id.*)

Plaintiff continued to be monitored, and was eventually referred for transfer back to his unit. (*See* Doc. # 16-1 at 7, entries for Sept. 3, 8, 9, 10, 11, 2009; Doc. # 16-1 at 10 ¶ 5; Doc. # 16-11 at 6 ¶¶ 6-7 (Mahakian Decl.).)

The progress note entry for August 3, 2010, approximately one month before Plaintiff was admitted to the infirmary for the second time, indicates that Plaintiff would not be moved to the infirmary as of that date. (Doc. # 16-1 at 8, Aug. 3, 2010 entry.) Plaintiff was described as "argumentative but not delusional." (*Id.*)

Senior Correctional Officer Ross sent a behavioral observation and referral form regarding Plaintiff on September 5, 2010, indicating that Plaintiff was not responding to instructions in a normal manner, and appeared very angry. (Doc. # 18-1 at 16.)

On September 7, 2010, defendant He'bert noted that she received a behavior observation and referral form for Plaintiff, indicating that he was reportedly banging, yelling, and accusing other inmates of threatening to "pepper ball" him in his cell. (Doc. # 16-1 at 8, Sept. 7, 2010 entry; Doc. # 16-1 at 10-11 ¶ 7 (He'bert Decl.).) Plaintiff was scheduled to see a provider on September 9, 2010, for evaluation. (*Id.*)

Around this same period of time, medical staff received a kite purporting to be from Plaintiff, alleging that he was a threat to himself. (Doc. # 16-1 at 11 ¶ 8 (He'bert decl.).) Plaintiff claimed that he did not write the kite and it did not match the handwriting on previous kites submitted by Plaintiff. (*Id.*) Due to the discrepancies, medical staff removed the kite from Plaintiff's file. (*Id.*)

On September 8, 2010, defendant He'bert went to Plaintiff's unit to check on him in response to the behavioral observation form, and he began screaming and yelling, and was described as "irrational, argumentative, not willing to discuss problem areas." (Doc. # 16-1 at 8, Sept. 8, 2010 entry; Doc. # 16-1 at 11-12 ¶¶ 9-10 (He'bert Decl.).) Plaintiff was advised to calm down and was instructed that if he did not agree to talk to defendant He'bert, he would have to be transferred to the infirmary for observation. (*Id.*) Plaintiff began yelling and screaming, and refused to cooperate. (*Id.*) An officer told defendant He'bert that Plaintiff had been "belligerent and screaming, banging, yelling at staff all day." (*Id.*) It was noted that Plaintiff "seems to have psychosis in past 2-3 days, especially at night, sleeps little and up all night talking, yelling in cell." (*Id.*) It was determined that Plaintiff should be transferred to the infirmary and placed on mental health status. (*Id.*)

On September 9, 2010, Plaintiff was seen by defendants Mahakian and He'bert. (Doc. # 16-1 at 8, Sept, 9, 2010 entries.) It was noted that Plaintiff was obsessed with legal issues. (*Id.*) Plaintiff submitted several medical kites concerning his legal paperwork and move to the infirmary on September 9, 10, and 15, 2010. (Doc. # 16-1 at 8-9; Doc. # 16-2 at 4.) In response to his grievance regarding placement in the infirmary, Plaintiff was told that he was admitted to mental health for observation due to the odd behavior he was exhibiting. (*Id.*)

1 According to defendants He'bert and Mahakian, they made decisions regarding
2 Plaintiff's mental health care in response to his abnormal behavior and due to concerns over
3 his mental well being, and not in retaliation for the filing of grievances or lawsuits. (Doc. # 16-1
4 at 12 ¶ 12 (He'bert Decl.); Doc. # 16-11 at 7 ¶ 12 (Mahakian Decl.).)

Defendants also provide declarations on behalf of defendants Brooks, Baker, and McDaniel, who state that in their positions as associate warden and warden at ESP, they were not involved in the provision of health care to inmates, and all medical matters are the sole province and responsibility of medical staff. (Doc. # 16-1 at 13 (Brooks Decl.); Doc. # 16-11 at 11 ¶¶ 5-8 (Baker Decl.); Doc. # 16-11 at 14 ¶¶ 5-6 (McDaniel Decl.).)

### 3. Conclusion

Defendants have presented the court with evidence that Plaintiff was placed in the infirmary for observation of his mental health due to behavioral patterns and concerns over his well being, and not in retaliation for his filing of grievances or lawsuits.

Plaintiff, on the other hand, has not presented the court with evidence to support his retaliation claim, other than his speculative opinion that his placement in the infirmary was related to the filing of grievances or lawsuits. Instead, the evidence before the court suggests that Plaintiff was placed in the infirmary for observation of his mental health due to behavioral issues. This finding is bolstered by the following facts: (1) Plaintiff was receiving mental health care prior to the time he was placed in the infirmary for observation; (2) when he was placed in the infirmary he was continually monitored; and (3) once it was determined that Plaintiff was stable for a sufficient period of time, he was released back to his unit.

Finally, Plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806. He points to no evidence in the record to support his claim that his placement in the infirmary was for something other than the legitimate correctional goal of monitoring his mental well being.

Plaintiff has failed to raise a genuine issue of material fact as to his retaliation claim. As a result, the court recommends that Defendants' motion be granted and that summary

9

judgment be entered in Defendants' favor. In light of this recommendation, the court need not reach Defendants' supervisory liability and qualified immunity arguments.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 16).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: September 19, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE